# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | |
|---|---|
| Kris Boerstler, ) | |
| ) | Civil Action No.: 1:21-cv-2334-JMC |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| UHS of Delaware, Inc. and Aiken ) | |
| Regional Medical Centers, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

    This matter is before the court for review of the Magistrate Judge's Report and Recommendation ("Report") filed on September 30, 2021. (ECF No. 12.) The Report addresses Defendant UHS of Delaware, Inc. and Aiken Regional Medical Centers' ("Defendants") Motion to Dismiss or in the Alternative, Stay and Compel Arbitration pursuant to the Federal Arbitration Act ("FAA") (ECF No. 5), and recommends that the court grant Defendant's Motion to Dismiss and compel arbitration for all matters relating to this action. (*Id*. at 17-18.) For the reasons below, the court **ACCEPTS** the Report and Recommendation (ECF No. 12), **GRANTS** Defendant's Motion to Dismiss (ECF No. 5), and **DISMISSES** the action without prejudice except as to issues related to the enforcement of the arbitration agreement.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

    The Report sets forth the relevant facts and legal standards, which this court incorporates herein without a full recitation. Plaintiff claims that beginning in 2017, she was sexually harassed and subjected to a hostile work environment by her employer, Aiken Regional Medical Centers ("ARMC"), and that upon reporting the behavior, she was retaliated against and constructively dismissed. (ECF No. 12 at 2.)

1

Defendants argue that Plaintiff signed a valid and binding arbitration agreement while employed, which requires her to "submit all matters relating to her employment with ARMC to binding arbitration, as opposed to pursuing them in court." (*Id*. at 2.)

Defendants present evidence that indicates Plaintiff completed a four-step course in 2013 which included a summary of alternative conflict resolution, the Alternative Conflict Resolution Agreement ("ARC Agreement"), an opportunity to review the ARC acknowledgement, and finally, the ARC attestation. (*Id*. at 4, 6.) Plaintiff completed all four steps of the course, for which she received a certificate of completion, and selected an option which affirmed she "had an opportunity to review" the ARC Program materials. (*Id*. (citing ECF No. 5-2 at 5-6 ¶ 13).) In pertinent part, the Arbitration Agreement states:

1. **How This Agreement Applies**

   This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce. This Agreement applies to any dispute arising out of or related to Employee's employment with Company or one of its affiliates, subsidiaries or parent companies ("Company") or termination of employment and survives after the employment relationship terminates. Nothing contained in this Agreement shall be construed to prevent or excuse Employee from utilizing the Company's existing internal procedures for resolution of complaints, and this Agreement is not intended to be a substitute for the utilization of such procedures.

   Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration ("Covered Claims"). This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. Such disputes include disputes arising out of or related to interpretation or application of this agreement.

   Except as it otherwise provides, this Agreement also applies, without limitation, to disputes regarding the employment relationship, compensation, breaks and rest periods, termination, or harassment and claims arising under the Civil Rights Act of 1965, Americans with Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Security Act of 1974 or funded by insurance), Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same

or similar subject matters, and all other state statutory and common law claims.

(ECF No. 5-2 at 14 ¶¶ 1-3.)

The ARC Agreement also provided employees an opportunity to opt out of arbitration. Specifically, the ARC Agreement stated:

> **9. An Employee's Right to Opt Out of Arbitration**
>
> **Arbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement**. In order to Opt Out of Arbitration, the Employee must submit a signed and dated statement on a "Alternative Resolution of Conflicts Agreement Opt Out Form" ("Form") that can be obtained from the Company's local or corporate Human Resources Department. In order to be effective, the signed and dated Form must be returned to the Human Resources Department within 30 days of the Employee's receipt of this agreement. An employee who timely opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to this Agreement. **Should an employee not opt out of this Agreement within 30 days of the Employee's receipt of this Agreement, continuing the Employee's employment constitutes mutual acceptance of the terms of this Agreement by Employee and the Company**. An Employee has the right to consult with counsel of the Employee's choice concerning this.

(*Id*. at 17 ¶ 9) (emphasis in original). According to Defendants, the course materials provided a link to an opt-out form, which an employee could access and complete. (ECF No. 12 at 5.) The program would show whether the form had been accessed by printing a date and time stamp next to the link for the opt-out form. (*Id*. at 5-6.) But if an employee never accessed the form, the status next to the form would indicate "Not Yet Started." (*Id*. at 6.) Defendants provided a print-out of Plaintiff's course details, which demonstrates Plaintiff completed each step of the course, including the ARC attestation, on December 6, 2013, and did not access or view the opt-out form, which still reflects a status of "Not Yet Started." (*Id*.) Plaintiff also did not submit an opt-out form to the human resources department within thirty (30) days of her receipt of the ARC Agreement and completion of the ARC course. (*Id*.) Therefore, Defendants argue Plaintiff is bound by the arbitration agreement, and the court should compel the parties to arbitrate under

3

Section 4 of the FAA.

Plaintiff counters that the ARC Agreement is unenforceable because despite the fact that she clicked the ARC attestation and completed the course materials, she (1) "never signed a document agreeing to its terms" (*id.*), and (2) the agreement does not reflect a "meeting of the minds" as to material terms of the contract related to the parties sharing the costs of arbitration (*id.*).

On July 28, 2021, Defendants filed a Notice of Removal. (ECF No. 1.) On August 4, 2021, Defendants filed a Motion to Dismiss, or in the Alternative to Stay Proceedings Pending Arbitration (ECF No. 5), declaring that the case fell within the strictures of the FAA. Plaintiff filed a Response in Opposition (ECF No. 10), to which Defendant filed a Reply (ECF No. 11).

The Magistrate Judge concluded that Defendants "demonstrated the requirements for compelling arbitration under the FAA," and recommended the court dismiss the case but retain jurisdiction over issues arising from the enforcement of the arbitration. (ECF No. 12 at 6, 17.) Neither party objected to the Report.

## II.     LEGAL STANDARD

### A. Report and Recommendation

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge only makes a recommendation to this court, and the recommendation has no presumptive weight. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The responsibility to make a final determination remains with the court. *Id.* at 271. As such, the court is charged with making *de novo* determinations of those portions of the Report to which specific objections are made. *See* 28 U.S.C. § 636(b)(1); *See also* Fed. R. Civ. P. 72(b)(3). In the absence of specific objections to the Magistrate Judge's

Report, the court is not required to give any explanation for adopting the Report. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Rather, "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note). Thus, the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

### B. <u>Arbitration under the FAA</u>

The FAA reflects "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "The FAA's policy of favoring arbitration augments ordinary rules of contract interpretation and requires all ambiguities to be resolved in favor of arbitration." *Ashford v. PriceWaterhouseCoopers LLP*, 954 F.3d 678, 682-83 (4th Cir. 2020) (citations and internal quotation marks omitted).

The FAA dictates that any "party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C.A. § 4. Written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Grounds for revocation include "contractual formation defects such as lack of mutual assent and want of consideration," *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999), and "generally applicable contract defenses, such as . . . unconscionability." *Doctor's*

*Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).  For the court to hear a challenge attempting to revoke an arbitration agreement, "[t]he grounds for revocation must relate specifically to the arbitration clause and not just to the contract as a whole." *Hooters of Am., Inc.*, 173 F.3d at 938 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402–04 (1967)).

Where (1) a valid arbitration agreement exists and (2) the claims at issue fall within the scope of the arbitration agreement, (3) the transaction is related to interstate or foreign commerce, and (4) one party fails, neglects, or refuses to arbitrate the dispute, the court has "no choice but to grant a motion to compel arbitration." *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500-501 (4th Cir. 2002); *see also Chorley Enter., Inc. v. Dickey's Barbecue Rest., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015).  The party resisting arbitration bears the burden of showing that the arbitration agreement is unenforceable.  *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000).

While the FAA requires a district court to stay judicial proceedings where claims are covered by written arbitration agreements, *see* 9 U.S.C. § 3, the United States Court of Appeals for the Fourth Circuit (the "Fourth Circuit") has held that "*dismissal* is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) (emphasis added).  Subsequent cases, however, have recognized "tension" between the approach noted in *Choice Hotels* and *Hooters*, in which the court entered a stay.  *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 376 (4th Cir. 2012) ("There may be some tension between our decision in *Hooters*—indicating that a stay is required when the arbitration agreement "covers the matter in dispute"—and *Choice Hotels*—sanctioning dismissal "when all of the issues presented . . . are arbitrable.").

### III.     ANALYSIS

The Magistrate Judge concluded that Defendants, as the parties seeking arbitration, demonstrated (1) the existence of a written agreement, which (2) applies to the employment disputes at issue here, (3) that the ARC agreement applies to interstate commerce and (4) that Plaintiff refused to arbitrate the dispute. (ECF No. 12 at 9.) Concluding that the burden shifted to Plaintiff to prove that despite the existence of the written agreement, she "did not actually agree to it—because the signature was forged, the terms of the contract were misrepresented, or some other reason evincing lack of true agreement," the Magistrate Judge determined Plaintiff could not meet that burden. (*Id*. (citing Gordon v. TBC Retail Grp., Inc., C/A No. 2:14-03365-DCN, 2016 WL 4247738, at *5 (D.S.C. Aug. 11, 2016)).)

First, the Magistrate Judge determined that all elements of contract formation under South Carolina law were present in the instant case. (ECF No. 12 at 11.) Moreover, Plaintiff was not required to manually or electronically sign the contract in order to be bound by its terms. (*Id*.) South Carolina contract law permits parties to "manifest assent" to an agreement by compliance with its proffered terms. (*Id*.) Highlighting that the evidence demonstrated Plaintiff had reviewed the ARC agreement which warned her to fill out and return the opt-out form to human resources within thirty (30) days, confirmed acknowledgement of the ARC agreement and the availability of the opt-out form, attested to having an opportunity to review the materials, and continued her employment with ARMC after the thirty (30) day period for opting out, the Magistrate Judge concluded that she had demonstrated assent to the restrictions therein. (*Id*. at 12 (citing *Hughes v. Charter Communications, Inc.*, No. 3:19-1703-SAL, 2020 WL 1025687, at *10 (D.S.C. Mar. 2, 2020) ("The agreement presented to Plaintiff was an opt-out agreement. If Plaintiff did not opt out within the specified time, she was bound by the agreement's terms."); *Carter v. MasTec*

*Services Co., Inc.*, No. 2:09-2731-PMD, 2010 WL 500421 (D.S.C. Feb. 5, 2010)).)   Thus, the Magistrate Judge found that the mere fact that Plaintiff had not physically signed the ARC Agreement did not "render [it] unenforceable against [Plaintiff]." (ECF No. 12 at 13.)

Turning to Plaintiff's argument that the ARC Agreement did not reflect a meeting of the minds as to the essential term of splitting the costs of arbitration, the Magistrate Judge rejected Plaintiff's contentions on the grounds that they would undermine the "liberal federal policy favoring arbitration agreements," and "conflict with [] prior holdings that the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." (*Id*. at 15 (citing *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000)).)  Here, the Magistrate Judge found Plaintiff had not demonstrated that the costs of arbitration were prohibitive to her or deterred her from arbitrating, as opposed to litigating her claims. (ECF No. 12 at 16.)  As such, she had not met her "substantial burden" on this issue. (*Id*.)  Therefore, the Magistrate Judge recommended the court find the ARC Agreement valid and enforceable.  Noting that the ARC Agreement itself anticipated further intervention from the court to enforce the terms of the arbitration, the Magistrate Judge recommended dismissal of the case except to retain jurisdiction over possible issues that may arise in arbitration. (*Id*. at 17.)

Here, neither party has objected to the Report and the court discerns no clear error on the face of the record.  The court has carefully examined the findings within the Report and concludes this case shall be dismissed for the reasons delineated within the Report.

### IV.     CONCLUSION

For the reasons below, the court **ACCEPTS** the Report and Recommendation (ECF No. 12), **GRANTS** Defendant's Motion to Dismiss (ECF No. 5), and **DISMISSES** the action without prejudice except as to issues related to the enforcement of the arbitration agreement.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

January 3, 2022
Columbia, South Carolina